BOTTOMLEY v. BROWN.

1. CONTRACTS—CONSTRUCTION—ELEVATORS—AGREEMENT NOT TO RE-ENGAGE IN BUSINESS.

Where defendant sold his elevator and warehouse and agreed not to "build any elevator nor directly or indirectly engage in the elevator or grain business, except for the purpose of buying grain to be ground at his mill," his subsequent

action in installing machinery in his mill for the purpose of cleaning and handling beans, and engaging in the business of buying beans, was in violation of his contract not to engage in the elevator business, although previous to the sale he had not engaged in buying and selling beans.

2. SAME—RESTRAINT OF TRADE—PUBLIC POLICY—FRAUD.

In the absence of fraud, such agreement to refrain from re-engaging in the elevator business in a little community where one elevator was useful and two could not probably survive, although the contract did not refer to the sale of the good will of the business, is not void as against public interest.

3. NAMES — FICTITIOUS NAMES — STATUTES — COMPLIANCE WITH STATUTE—CONTRACTS.

Act No. 164, Pub. Acts 1913, cannot be so construed as to impair the right of a promisee in respect to a promise made before its passage, and although complainants had not complied with its provisions requiring such copartnerships to file a verified certificate with the county clerk, they were not barred from enforcing a contract made before the enactment of the statute.

Appeal from St. Clair; Tucker, J. Submitted June 8, 1915. (Docket No. 4.) Decided September 28, 1915.

Bill by William C. Bottomley and Henry E. Dryer, copartners as Bottomley & Dryer, against Allen Brown for an injunction restraining defendant from engaging in the grain and elevator business at Berville, Michigan. From a decree for defendant, complainants appeal. Reversed.

*Burt D. Cady,* for complainants.

*Moore & Wilson,* for defendant.

In the year 1905 defendant sold and transferred to complainants, who are personally named in the instrument evidencing the sale and are described therein as a partnership under the name Bottomley & Dryer, an elevator and warehouse, built on railroad land at Berville, Mich., and all machinery, engines, scales, and

apparatus of every kind connected or used in the operation of said elevator. The instrument contained also the following promissory agreement:

"The said Allen Brown agrees that he will not build any elevator nor directly or indirectly engage in the elevator or grain business at or near Berville, Michigan, except for purpose of buying grain to be ground at his mill."

The purchase price was $2,500. Complainants, the vendees, took possession of the property, and have been since engaged in the elevator and grain business. In 1905 few beans were grown in the immediate vicinity of Berville, and defendant, the vendor, had not engaged in buying and selling beans. He had, however, operated the elevator, and had also a flour mill at Berville. Later more beans were grown in the vicinity, and the bean business is now the most considerable part of that carried on at the elevator. Complainants installed machinery for cleaning and handling beans in 1906 or 1907. In 1914 defendant ceased to operate his plant as a flour mill, and himself installed in it machinery for cleaning and handling beans, and engaged in the business of buying beans from the farmers. There are and have been no other elevators at Berville, which is a small community, and it does not appear that any other persons are there engaged in the elevator or grain business.

In this action complainants, relying upon defendant's promise, seek to restrain him from continuing to buy and handle beans at Berville. The trial court was of opinion that neither the promisor nor promisees had in mind, when the contract was made, the buying and selling of beans as a part of defendant's business, and that, construing the contract in the light of their actual understanding—not stretching it to cover anything not plainly and clearly within its intent and meaning at the time of its execution—defendant had not violated his agreement.

Defendant presents some further contentions, one of which is that complainants had not complied with Act No. 164, Pub. Acts 1913, when the suit was begun, and therefore cannot maintain the action. Another contention is that the defendant's promise is of no legal effect, because it is the settled policy in this State to refuse to give such promises effect unless necessary to give effect to the transfer of the good will of a business which is sold, citing *Hubbard* v. *Miller*, 27 Mich. 15 (15 Am. Rep. 153). Still a further contention is that beans are not grain, and one buying and selling them is not in the grain business.

OSTRANDER, J. (*after stating the facts*). The trial judge was wrong, in my opinion, in giving too narrow a meaning to defendant's promise. Clearly, defendant is in the elevator business, whether strictly in the grain business or not. The testimony supports the conclusion that he has introduced into his mill, as apparatus for conducting his business, machinery for cleaning and elevating beans, machinery similar in purpose and operation to that installed by complainants in their elevator. It is the most common of common knowledge that elevators built along railroad tracks as convenient facilities for receiving, storing and shipping produce handle such products as the immediately surrounding country produces. They are constructed and maintained for the purpose of handling products, the surplus of which must be finally disposed of in some other market. An elevator in a community where little except wheat is grown handles, principally, wheat. If, suddenly, all neighborhood farmers ceased to grow wheat and planted only corn, or rye, or beans, still the elevator would be the convenient facility for receiving, storing and shipping the surplus crop. It is an elevator, and the business connected with it is the elevator business. The installation of new apparatus might be necessary, but the elevator business, as it is generally

conducted, could not be carried on except by taking whatever surplus crop the community desired to dispose of. Defendant promised that he would not build an elevator nor directly or indirectly engage in the elevator business. The testimony is conclusive that he has directly engaged in the elevator business; has opened in the community an elevator where none before existed.

Is defendant's promise one which he may be compelled to observe? The headnote to *Hubbard* v. *Miller, supra,* which fairly states the meat of the opinion upon the point, is as follows:

"Contracts in restraint of trade, which, considered with reference to the situation, business and object of the parties, and in the light of all the surrounding circumstances, appear to have been made for a just and honest purpose and for the protection of legitimate interests, and are reasonable as between the parties, and not specially injurious to the public, will be upheld; and the weight or effect to be given to the surrounding circumstances is not affected by any presumption for or against the validity of the restriction."

In the case at bar the written instrument in question does not in terms refer to the sale of a business or of the good will of a business. In the light of surrounding circumstances, as shown by the record, it is apparent that one elevator in the little community was useful, and that two could not, probably, survive. Defendant had conducted the business in the elevator he sold with the apparatus he sold. Necessarily, the new owners bought the business, and, to leave the matter in no doubt, they eliminated the former owner by the promise which they now rely upon. There was no fraud—nothing unreasonable in the transaction. There was only the recognition by both parties of controlling circumstances. It does not appear that the public was injuriously affected by the transaction.

May complainants enforce the promise? It was

made long before the legislature required that such copartnerships as theirs should make and file a certain written and verified certificate with the county clerk. It happens that complainants do business in both Macomb and St. Clair counties. Before this suit was begun they made or caused to be made the certificate required by the act of 1913 (Act No. 164, Pub. Acts 1913), which has been referred to. For some reason, not perhaps fully explained, it seems that a certificate was not actually filed in St. Clair county until after this suit was begun. It is to be inferred that the one intended for filing lacked verification, and was returned by the clerk, was corrected, and filed after suit was begun. It was correct in form, and contained all the information which it was designed to afford.

It appears, then, that the agreement of the parties was not made while any disability of complainants existed; that the contract was, and is, a lawful one; and that the precise question which appellee's contention presents is whether, until they have complied with the statute, complainants must be denied the right to enforce the contract in the courts.

In *Cashin* v. *Pliter*, 168 Mich. 386 (134 N. W. 482, Am. & Eng. Ann. Cas. 1913C, 697), and in *Pontiac Savings Bank* v. *Pipe Co.*, 178 Mich. 261 (144 N. W. 486), it is pointed out that the disability imposed by the statute is of the offending partners, who are not permitted to enforce a contract made while the disability continues. In a sense, the complainants, in seeking to enforce the contract in question, are carrying on their business as copartners. Their business is affected by the violation of the contract, and its enforcement will benefit their business. In the same way they would be benefited if they were to bring suit upon a promissory note, in which the partnership was named as payee, the note having been made years before the statute was enacted, but falling due after it

became law. The statute was plainly not aimed at such affairs. Although it is a police measure, it should not be so construed as to impair the right of a promisee in respect to a promise made before the statute was passed. It is contracts made in the course of carrying on a business unlawfully which are affected, as to their enforcement, by the disability of the offending parties, while the disability continues.

The decree of the court below will be set aside, and one will be entered here granting the relief prayed for, including a permanent injunction, with costs of both courts to complainants.

BROOKE, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice McALVAY took no part in this decision.